Prell v. McDonald.

## LEWIS PRELL v. McDONALD AND FILES.

1. CITY MARSHAL; *Power to appoint Deputy*. Under the act of 1867 (chapter 68,) governing cities of the second class, the city marshal had no power or authority to appoint a deputy; and such power could not be conferred upon him by the mayor and council by order or resolution, but only by ordinance duly enacted as provided by the city charter.

2. DEPUTY MARSHAL—*Officer de facto, and de jure; presumption*. In an action for false imprisonment, where the defendant justifies as an officer, in addition to the necessary and proper proofs in other respects, it is essential to a good defense that the defendant should be an officer *de jure*; but, in the absence of proof to the contrary, upon proof that he was an officer *de facto* the court will presume that he was also an officer *de jure*.

3. MUNICIPAL CORPORATIONS—*Towns and Cities—Acts creating are Public Laws*. Towns and cities are public, not private corporations; their powers are exercised for the general good of the community, and not for private purposes; and special laws (enacted by the territorial legislature) creating such corporations are public acts, of which courts will take judicial notice.

4. ARRESTS WITHOUT PROCESS; *Common-law rule as regards liability*. An officer making an arrest of an actual offender on sufficient information, but without process, to answer to a complaint to be preferred, would not at common law be liable in damages therefor.

5. MAYOR—*When ex officio a Judicial Officer*. A mayor of a city of the second class, under the provisions of the charter of 1867, (ch. 68, article 4, § 21,) was a judicial officer, clothed with judicial powers, and might lawfully exercise all the powers and jurisdiction conferred by said article 4 upon police judges, to try and punish for offenses against the ordinances of his city, and had jurisdiction under the laws of the State concurrent with justices of the peace of his county.

6. FALSE IMPRISONMENT; *Arrest without process; when illegal*. McDonald was mayor, and Files was deputy marshal, of the city of Fort Scott. Files arrested Prell without a warrant, for an offense not committed within the presence of either McDonald or Files, and took him before McDonald, where he was tried before McDonald without a jury, without any arraignment or plea, and without any complaint, written or otherwise, except that Files told McDonald, orally, not under oath,

that Prell was charged with "fighting and disturbance of the peace,"· without stating when, where, with whom, or with what weapons the fighting was done, or whether it was a misdemeanor or a felony under· the laws of the State, or a breach of a city ordinance, and McDonald found Prell guilty, fined him, and ordered him to be imprisoned ; and Files imprisoned him : *Held*, That said proceedings are void, and that said McDonald and Files are liable to said Prell for said imprisonment.

7. COMPLAINTS, *in Criminal Cases, must be made in writing, and under oath.* At common law no *trial* for any offense, except contempts, could be had unless upon a written complaint, attested by the oath of· the complainant. Arrests might be made on view ; but the magistrate or court could proceed thereafter only on a written complaint. The statute of 1867, (ch. 68,) providing for the government of cities of the second class, does not change this rule with respect to offenses committed against the laws of the State, nor offenses against the ordinances· of the city. *

8. WARRANT—*Omission of Name vitiates Warrant, Indictment, etc.* The omission from a warrant, indictment, or other instrument, of the christian name of the party intended to be charged, and which warrant, indictment or instrument does not otherwise describe the person therein intended to be mentioned, is void. Such warrant affords no· protection to the officer executing the same for an arrest or imprisonment made thereon.

9. LIABILITY ; *Illegal acts* ; *Malice.* When the acts of officers in arresting and imprisoning a person are void, they are liable to the party injured, although they may have acted in entire good faith. When an· officer acts without authority, or exceeds his authority, he is liable,. whether he acts maliciously or not.

*Error from Bourbon District Court.*

ACTION for false imprisonment, brought by *Prell* against· *John McDonald* and *Benjamin Files.* The petition was in the ordinary form, alleging an illegal arrest, and a false imprisonment, in May, 1867. The defendants admitted

[ * SEE § 78, ch. 60, and § 57, ch. 62, Laws of 1871, and § 80, ch. 100, Laws of 1872, changing this rule in certain cases in proceedings before the Police Court for violations of city ordinances enacted by cities of the second class, and cities of the third class.—REPORTER.]

the arrest and imprisonment, and in justification of their acts alleged that *McDonald* was the mayor, and *Files* the deputy marshal of the city of Fort Scott; that said city was a duly incorporated city of the State of Kansas; " that the plaintiff on said 25th of May, being within said " city, was quarreling and fighting with one A. M. Hell- " man, willfully disturbing the peace, order, and quiet of " said city, by noisy and boisterous talk and profane dis- " course, in violation of the laws of the State of Kansas " and the ordinances of said city, and was so quarreling, " fighting, swearing, and disturbing the peace in the " presence of the said defendant Files, who, (acting as " deputy marshal and police officer as aforesaid,) for the " committing of the said offenses then and there arrested " the said plaintiff, as he lawfully might, and took him, " said plaintiff, before said defendant McDonald, who, as " mayor aforesaid, was, in virtue of his said office, author- " ized to exercise the powers and jurisdiction of police "judge of said city of Fort Scott, (the said city then " having a population of more than 1,000 inhabitants, " and less than 4,000 inhabitants,) and as such acting " police judge had jurisdiction of said offense whereof " the plaintiff was guilty; and defendant McDonald there- " upon held a court for the trial of the said plaintiff upon " the charge duly made of disturbing the peace against. " the laws of the State of Kansas and ordinances of the " city of Fort Scott, and upon said trial, said plaintiff " was found and adjudged guilty, and was fined five dol- " lars and costs, and to stand committed till paid; that " said fine and costs remaining unpaid, the said mayor " and acting police judge issued a warrant of commit- " ment, directed to the marshal of said city, commanding " him to receive the said plaintiff into his custody," etc., under which warrant plaintiff was imprisoned, etc. Said

answer also set forth Ordinance No. 2 of said city,
approved February 16, 1861, as follows:

" AN ORDINANCE *to preserve the peace, order, and quiet of the*
- *City of Fort Scott.*

" SEC. 1. Be it ordained by the Mayor and City Coun-
cil of the City of Fort Scott, that any person who shall
willfully disquiet or disturb the peace, order, and quiet
of said city, by rude and indecent behavior, profane dis-
course and disorderly conduct, or noisy and boisterous
talking, or disturbing the peace, order, and quiet of said
city, shall be deemed guilty of misdemeanor, and, upon
conviction thereof, fined in any sum not less than five dol-
lars nor more than one hundred dollars, or imprisoned in
the city prison, or both, at the discretion of the city re-
corder, who shall have jurisdiction of all offenses under
this act.

" SEC. 2. This ordinance to take effect and be in full
force from and after its passage."

The action was tried at the April Term, 1868. The
evidence showed that plaintiff was imprisoned by *Files*,
(by order and direction of *McDonald*,) on the 25th of
May, 1867, and detained in custody until the evening of
the 28th, when he paid the fine and costs, ($7.20,) and
was released. The defendants proved that *McDonald*
was mayor of Fort Scott from April 10, 1867, to April
10, 1868; that the population of said city at the charter
election in April, 1867, did not exceed 4,000, (§ 21, p.
126, laws of 1867;) that John G. Harris was the marshal
of said city in April and May, 1867; and, (by the jour-
nal of their proceedings,) that the city council of said
city at a special meeting held on the 10th of April, 1867,
by order entered on their journal had " instructed " the
city marshal " to appoint a deputy immediately; " that
Marshal Harris had, on the 11th of April, appointed de-
fendant *Files* his deputy; that such appointment was in
writing, and was delivered to the city clerk; that search
had been made by the city clerk for such appointment,

but it could not be found; that *Files* was an acting dep-uty marshal, and an acting police officer of said city from April 11, 1867, to April, 1868. Defendants then produced and gave in evidence the "book of ordinances" of said city, and read Ordinance No. 2, above recited. They also proved that *Files*, on the morning of the 25th of May, was informed that plaintiff and one Hellman were fighting and disturbing the peace, at their store, in said city; that he proceeded at once to the place. What then and thereafter occurred is thus detailed by *Files* in his testimony:

"I saw plaintiff in the store of Hellendall & Prell on that day, about eight or nine o'clock in the morning. When I first saw him, he was on the floor of the store. There were four or five men in the store when I went in. The plaintiff left the store directly after I came in, and went into the cellar. The men were all talking loud. I went into the cellar about two minutes after I went into the store. I then saw plaintiff in the cellar by himself, and told him he had been fighting, and that he must re-port at the mayor's office at two o'clock, before the mayor. He said he would do so. There was nothing done by me to plaintiff. I came up in a short time out of the cellar, and left him in it. He promised me he would come to the mayor's office at two o'clock. He did not come, and I went down after him, and he and Hell-man walked up to the mayor's office before me—about one hundred yards before me. When we got there, defendant McDonald was there. He asked me what the charges were against these men, (Prell and Hellman.) I told him it was fighting and disturbance of the peace. Defendant McDonald held a court there as mayor and police judge. A trial was had. A. Costen and myself were sworn as witnesses, and testified."

It was admitted that there was no complaint in writing. The record or docket entry of the proceedings and trial is given in full in the opinion. The mayor fined plaintiff $5.00 and costs; he refused to pay, and a commitment was issued, on which *Files* arrested plaintiff and impris-

oned him. This commitment is given in full in the opinion. Plaintiff objected and excepted to the evidence offered in regard to the official character of *Files* as deputy marshal; to the introduction of the Ordinance Book, and Ordinance No. 2; to the record of the trial before the mayor, and to the commitment. He also claimed that there was no evidence that Fort Scott had ever been incorporated or organized as a city under any Territorial or State law. The court held that it could take judicial notice of the act of 1855, (ch. 40, p. 812,) incorporating the Town of Fort Scott, and the act of 1860, (ch. 54, Special, p. 114,) incorporating the City of Fort Scott. The jury returned a verdict in favor of the defendants. Plaintiff moved for a new trial, which was overruled, and he brings the case here by petition in error for review.

*M. V. Voss*, for plaintiff in error:

1. The court will not take judicial notice of private acts or ordinances unless they be specially plead and proved. If Fort Scott ever had a corporate existence under a private act of Kansas Territory it does not so appear from the answer, nor from the evidence. No existence of the city as a body corporate is shown or pretended to be shown under any other act than the act governing cities of the second class, (ch. 68, laws of 1867.)

Are ch. 40, laws of 1855, (p. 812,) and ch. 54 of the " special acts" of 1860, p. 114, (relating to the town and city of Fort Scott,) private or public acts? If they are public acts the court will take judicial notice of them; if private acts, they must be pleaded as required by § 133 of the code of 1862. We contend that the acts are private—because, first, they are published among the private acts, and are expressly recognized as " private" and " special" by the Territorial Legislature that passed

them; second, the act of 1860 defines the particular quarter sections of land upon which the act is to operate, showing on its face that it is local and private in its nature, having no application whatever to any portion of the State or people thereof except those who reside and live upon these certain specific quarter sections of land; third, certain individuals are named in the act, (§ 19,) to carry it into effect.  This is a peculiar local and private feature, and tends strongly to stamp the character of the act as private.   9 Bac. Abr., 230.

2. Ordinance No. 2 must fall unless it is found that Fort Scott was a duly organized corporation on the day of the pretended passage of the ordinance, February 16, 1861.  No subsequent incorporation of the city could have a retroactive effect to validate an invalid ordinance.

Again, no evidence was offered or given of the due enactment or publication of said ordinance.  The mere production of the " book of ordinances" was not sufficient.

3. Was the defendant Benjamin Files an officer?  Suppose Marshal Harris did appoint Files " deputy marshal;" where did he get his authority therefor?  Not in the act of 1867, regulating cities of the second class, for no such authority is given there.  Paragraph 14, page 115, only gives the city counsel power to create an office. Until there is such an office *created* there can be no officer appointed to fill it.  There is no such office, and of course the marshal had no power to appoint a deputy; hence Files was not an officer *de jure*, nor an officer *de facto*.

In this case the action was against the officers themselves; they must show that they were officers *de jure*, and not merely acting officers; as to third parties it is sufficient that they were acting officers, but the rule is different when the action is against the officer himself. 3 Scam., 483; 3 Johns., 589.

4. The original arrest made by Files was illegal. It was not made " on view;" but *after* the alleged offense Files went to plaintiff's store and accused him of having *theretofore* been fighting, and ordered him to go to the mayor's office. Such proceedings are not within the statute, (§ 1, art. 5, p. 126, laws of 1867,) authorizing arrests " without process" for offenses committed in the *presence* of the officer. The record nowhere shows that the plaintiff was fighting or committing any unlawful act when the arrest was made. The most that was *claimed* was, that he had been fighting.

5. The mayor had no jurisdiction. He was not a judicial officer. Sec. 21, of art. 4 of the charter, (Laws of 1867, p. 126,) is unconstitutional and void. The mayor is not invested with judicial power; he is not made a court; no power is conferred upon him; no jurisdiction is given to him; he is simply required to *exercise* the duties of a judicial officer. If the judicial power is *vested* in courts and in judicial officers, will it be contended that it can be exercised by a ministerial or executive officer? But if as a court he had authority to try cases, there was no " complaint in writing"—" no complaint on oath." Defendants assert that none was necessary, but that for any violation of an *ordinance*, the offender may be tried without any complaint in writing being made. If this is true, the defendants' position must come to this: That on Saturday a man fights; on the next Saturday some police officer learns the fact, and proceeds without warrant or complaint to arrest him for the act. He takes him before the police judge and there verbally informs the court that the arrested person has been fighting. The court then without any complaint or information proceeds to fine him. Such a proceeding would be void at common

law; for under that law there must be a charge in writing supported by affidavit.   Our statute does not change this rule.   On the contrary, by § 3, p. 123, laws of 1867, the police judge has the same law to govern him as justices of the peace; hence the complaint is required to be in writing and upon oath.   Barb. Cr. L., 588, cited by counsel for defendants is not in point.   The proceedings commented on by Barbour are under the N. Y. vagrant act, and it is only authority under that statute, and no complaint of any character was necessary.   But on page 615 Barbour says: "And it is said the only cases in which this document is properly dispensed with, are those in which justices are authorized to convict upon their view."

6. The docket entry does not show that any judgment of conviction was rendered against plaintiff.   It simply alleges that he was "found guilty."   A *judgment* must be shown.   Hurd on Habeas Corpus, pp. 405, 406, 407.

Nor does the docket show any plaintiff or defendant. If the city had been duly organized, the case would have stood, " *The City of Fort Scott v. Lewis Prell*," or if it was a proceeding under the statute, it should have been "*The State of Kansas v. Lewis Prell*." But here the record shows there was no city, or State, nobody, no corporation, nor any other power, prosecuting.   At most, the record is a mere verdict without any judgment; and it is only by implication that we can tell what the verdict found him guilty of.   There was no complaint or other charge in the record to which the verdict could refer for support.   Had there been a written charge, this verdict or special finding of guilty, might refer to the offense charged.   But no issue was made up, and could not be without a written charge against the plaintiff.   There was nothing to adjudicate upon—nothing to consider, order, or adjudge.

An inferior court is never presumed to have jurisdiction, and it must be made to appear by their record affirmatively that they have, or they are liable in trespass. 2 Ohio, 251; 3 Ohio St., 498; 12 Ohio St., 644; 14 Ohio St., 213; 10 Wend., 196; 14 Barb., 96; 4 Mass., 641; 16 Mass., 355, 359, and notes; 16 Ill., 348; 26 Ill., 45; 26 Mo., 65; 27 Mo., 101.

The mayor's docket does not show any written complaint; nor any complaint on oath; nor that the alleged offense was committed within the mayor's *territorial* jurisdiction; nor whether plaintiff was brought before him by process, or by arrest on view.

7. The mittimus or warrant authorizing the imprisonment of plaintiff was void on its face: 1st, it does not run in the name of the State, as required by the constitution; 2d, it is indefinite and uncertain; it does not command the marshal to arrest Lewis Prell, the plaintiff, but simply "Hellman and Prell;" 3d, it does not recite any legal judgment of conviction. It is a nullity, and affords no protection to any one.

8. The proposition that malice and want of probable cause must be shown, has no application to an action of trespass to the person. Where there is no jurisdiction the case must be viewed in the same manner as an ordinary action of trespass to the person, and in the same light it would be viewed if there was no pretense of authority. *Steel v. Williams*, 18 Ind., 161; *Turpin v. Raney*, 3 Blackf., 210; *Wise v. Withers*, 3 Cranch, 331; 1 Chitty's Pl., 182, 183; Hilliard on Torts, 243.

*W. C. Webb*, for defendants in error:

1. The court will take judicial notice of the first charter of the *city* of Fort Scott, passed by the Territorial Legis-

lature and approved February 27, 1860. (Special Laws, ch. 54, p. 114.) Such acts are *not* "private acts." They are generally known as "public local" laws, and need not be pleaded. *State ex rel. Cothren v. Lean*, 9 Wis., 284, 295.

The record discloses the fact that the city of Fort Scott, in May, 1867, was a city of the "second class." Chapter 68, laws of 1867, incorporating "cities of the second class," was approved February 23d, and published March 2, 1867. Section 1 declares that, "all cities containing more than 1,000 and less than 15,000 inhabitants *shall be governed by this act.*" This included the city of Fort Scott. And the record shows that the city council, chosen under the old charter, at a special meeting held March 7, 1867, proceeded to conform the city organization and government to said chapter 68.

2. Ordinance No. 2 was enacted February 16, 1861, pursuant to the authority given by § 10 of ch. 54, Special Laws of 1860, above cited. Said ordinance is a *police regulation*, necessary for the proper government of the city, and "not inconsistent with the constitution of the United States and the organic act of Kansas."

Section 8 of art. 5 of said chap. 68, laws of 1867, (p. 127,) declares that "all ordinances in force and not inconsistent" with said chapter shall remain in full force, etc. Said "Ordinance No. 2" is not inconsistent with said chap. 68. It was therefore in force, and applicable to the case brought against plaintiff.

3. Were the defendants *McDonald* and *Files* the legal mayor and deputy marshal of the city of Fort Scott on the 25th of May, 1867? The record shows that at the election held on the first Monday of April, 1867, (§ 10, art. 1, ch. 68,) the defendant McDonald was chosen mayor, and John G. Harris was chosen marshal of saip

city; that the mayor and marshal elect qualified as such, April 10, 1867; that on the same day the new council instructed the marshal to "appoint a deputy;" that marshal Harris appointed the defendant Files his deputy on the 11th of April, and Files was duly sworn in as such officer by the president of the council.

It follows, from these facts, that the defendants were officers *de jure*, as well as *de facto*; and it was not error to allow proof of the fact that Files was an acting police officer. *Com. v. Hastings*, 9 Metcalf, 260.

4. Had the defendant Files authority to arrest the plaintiff, on view—that is, without a *warrant?*

Judicial proceedings before police courts are of two kinds—"Ordinary" and "Summary." In determining the liability of the mayor *ex officio* police judge, this distinction is material. But sheriffs, marshals, constables, and policemen, *as conservators of the peace*, may arrest on view all who break the peace; and they may also arrest, without warrant, all who have committed any crime or misdemeanor, and all against whom there are reasonable grounds of suspicion of having committed a felony. This power is as unquestionable as it is ample. It exists at common law, and is sustained by numerous authorities, English and American: 2 Bacon's Abr., 348, title "Constable, C;" 1 Hawkin's P. C. 490, §§ 13 to 17; 2 Hawkin's P. C., 129, § 8; *McCloughan v. Clayton*, 3 Eng. C. L., 190, 192; *Derecourt v. Corbishly*, 32 Eng. L., and E., 186, 188; *Burke v. Bell*, 36 Maine, 317, 321; *Taylor v. Strong*, 3 Wend., 385; *Roberts v. The State*, 14 Mo., 138, 145; *White v. Kent*, 11 Ohio St., 550.

And the exercise of this power is not in violation of the fundamental principle forbidding unreasonable searches and arrests except by warrant supported by oath or affirmation. *Rohan v. Sawin*, 5 Cushing, 281, 285.

The charter of the city of Fort Scott, as it existed in May, 1867, confers this express authority on the marshal and policemen of that city. Laws of 1867, p. 126, art. 5, §§ 1, 2.

5. Had the defendant McDonald jurisdiction of the person of the plaintiff in error ?

In "ordinary" proceedings, jurisdiction of the person is acquired by means of process, duly issued and duly served; and this applies to all courts having jurisdiction to hear and determine, or to examine and hold to bail, any person charged as an offender against the criminal laws of the State.

Bouvier (2 Law Dic., 558) defines "summary proceedings," as distinguished from "ordinary" or "formal," to be "cases promptly adjudged, without unnecessary form." There are "summary" proceedings, and "summary" convictions, in three classes of cases : first, cases of contempt; second, where a crime or misdemeanor is committed in the presence of the court, or magistrate; and third, for violations of mere *police* regulations and ordinances. In no cases embraced in these classes is a "complaint in writing" necessary before *arresting* the offender. In some, complaints are necessary, after arrest, and before trial, but not in all.

Defendant Files arrested the plaintiff for violating the ordinance " to preserve the peace, order, and quiet of the city of Fort Scott." He took the plaintiff before the mayor, who asked what the charge was against plaintiff, and Files told him it " was fighting and disturbance of the peace." Was a " complaint in writing" necessary ? We say not: Barbour's Cr. Law, 586, 588. And this seems to be recognized in the cases in 14 Mo., 9 Metcalf, and 11 Ohio St., *supra*.

The "powers and jurisdiction of police judges" of

cities of the second class, are prescribed by art. 4, chap. 68 (p. 123,) Laws of 1867. Section 1 expressly gives jurisdiction in two classes of cases : First—" Exclusive jurisdiction to hear and determine all offenses against the ordinances of the city;" and second—The jurisdiction " conferred on justices of the peace in all civil, penal, and *criminal* cases." The jurisdiction indicated by this second clause is that arising " under the laws of the State," as distinguished from mere " police jurisdiction." This distinction runs through the whole of said " Article 4." Sections 1, 2 and 7 relate to *both* classes; §§ 16 and 17 relate only to the *police* jurisdiction; while §§ 3, 4, 5, 6, 8, 9, 10, 11, 12, 13 and 19 relate to trials and examinations for offenses arising under the general laws of the State.

Section 11 declares that " all cases not herein specially provided for," shall be governed by laws regulating justice's courts. What cases are specially provided for by said " Article 4 ?" Clearly, " all offenses against the ordinances of the city; " (§ 1, p. 123.) In these cases the police judge " shall have power to bring parties before him *forthwith* for trial :" he is made a " conservator of the peace," and his court is to be " open every day except Sundays;" (§ 14, p. 124.)

Here is the express authority for " summary proceedings." But how is the trial regulated ? Who is to write out the " complaint?" Is it the judge's duty ? Is it the marshal's duty ? At whose *expense* is it to be drawn ? The general laws of the State, regulating trials in justices courts do not apply. That the city council may, by ordinance, prescribe rules and regulations governing trials for violations of their ordinances, is beyond doubt; (§ 1, art. 3, p. 112.) Not having done so, what is the consequence ? Is the police court powerless because

there is no ordinance " regulating the practice and proceedings in police courts ?"

The police court had jurisdiction of the alleged offense. Policeman Files took the alleged offender before the court, and preferred his charge. The docket entry commences thus :

" FORT SCOTT, MAY 25th, 1867. MAYOR'S COURT.— Brought before me, Lewis Prell and A. M. Hellman :"

Does not this show jurisdiction *of the person ?* The " charge" was entered in the docket by the mayor (continuing the sentence, as above,) thus :

—" charged with disturbance of the peace of the city, by fighting :"

Is not this a " complaint in writing ?" Is it not a statement of an offense against Ordinance No. 2, and within the jurisdiction of the court, *as to subject-matter ?* There was a hearing or trial, and the docket entry continues :

—" upon hearing the case, and the testimony of witnesses, they were each found guilty, and fined five dollars each and costs, and to stand committed until paid."

Does not this show *an adjudication ?* If there was jurisdiction, and an adjudication, errors in form, in matters not of substance, cannot be inquired into in an action for false imprisonment. If the plaintiff was dissatisfied with the result of the trial he might have removed the cause to the district court by petition in error, for review; or he might have sued out a writ of *habeas corpus,* and tested the validity of the proceedings.

But it is objected that the proceedings are void because the mayor's docket " does not show any plaintiff and defendant." The omission is not matter of *substance.* There is neither statute nor ordinance requiring summary proceedings before the police court of Fort Scott to be *entitled.* It is further objected that no jury was called.

No jury is authorized, or even allowed, in cases arising under the city ordinances. Laws 1867, p. 124, §§ 8, 14, 16.

Would the judgment, or proceedings of the mayor's court, *operate as a bar to another prosecution for the same offense?* If so, it is sufficient. The plaintiff was informed of the nature of the charge against him; he was tried and adjudged guilty; he paid the fine. There is no doubt as to its sufficiency.

6. It is objected that " the mittimus is void on its face," and three grounds are assigned.   Of these in their order: 1st.–The constitutional requirement, that " the style of all process shall be *The State of Kansas*," is not applicable to justices', police, and other inferior courts not of record; *Dickerson v. Rogers*, 19 Johns., 279; 3 Kas , 448; but the writ does run in the name of " The State of Kansas," in the mandatory clause, and that is sufficient. 2d.–The warrant commanded the marshal to arrest Hellman and Prell, and not "Lewis Prell." The mayor's docket shows that *Lewis Prell* was arrested, tried and convicted; and the record in this case shows that the *same Lewis Prell* was arrested on the mittimus, and that he paid the fine and costs adjudged against him.   There is. nothing indefinite; and after such payment it is too late to object to the omission of his christian name. 3d.–The mittimus *does* " recite a judgment of conviction." It distinctly states *the charge*, the *examination* as to the truth of the charge, the *finding* " that such charge was true," and the *order* that " said Hellman and Prell each pay the sum of five dollars and costs, and stand committed until paid." The word " ordered," in the mittimus, is equivalent to the word " adjudged." *Broadstreet v. Furguson*, 17 Wend., 181.

If the mittimus is " process," it performed its office. The plaintiff paid $7.20, and was discharged.   It is now

too late to allege " false imprisonment" for a defect which he ought to have taken advantage of by *habeas corpus,* or petition in error. *Parsons v. Swett,* 32 N. H. 87, 89; *Hanna v. Russell,* 12 Minn., 80, 85.

7. The record in this case shows that both defendants acted in good faith, and also, that the plaintiff was guilty of the offense charged. Reasonable grounds of suspicion *may justify* an arrest. 6 Humphreys, 53; 9 Pa. St., 137. Malice, and want of probable cause, must both be shown, to maintain an action for false imprisonment. *Beebe v. DeBaun,* 3 Eng., 510; *Malone v. Murphy,* 2 Kas., 250, 262.

The record shows conclusively that there was *sufficient evidence* before the mayor to authorize and support his finding and judgment. Errors and technicalities must be disregarded. To hold otherwise is to say to every officer of the law, that if he transgress in the least, in his honest efforts to suppress vice, to preserve the peace, to prevent the commission of crime, or to restrain criminals, he shall be amerced in heavy damages for a mere fanciful wrong.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for false imprisonment. The judgment below was for the defendants, and the plaintiff brings the case to this court. It is seldom that a case is brought to this court that presents so many nice and difficult questions as this case does. Some of them have never been submitted to a court of last resort. Others of them have been before such courts, and the decisions upon them are conflicting. We have examined carefully all the questions in this case, and shall decide such of them as is necessary to dispose of the case in this court, and in the court below.

I. It is admitted by the defendants that they imprisoned the plaintiff; but they claim that the imprisonment was neither illegal nor malicious. They claim that the plaintiff violated a certain ordinance (No. 2) of the city of Fort Scott, and that he was legally arrested, tried, convicted, sentenced, and imprisoned for such violation; and that during all these proceedings the defendant Benjamin Files acted as, and was, the deputy city marshal of the city of Fort Scott, and the defendant John McDonald acted as, and was, the mayor of said city; and that as said city contained more than 1,000 and less than 4,000 inhabitants, he performed all the duties of a police judge for said city. (Ch. 68, Laws of 1867, p. 126, § 21.) During the time that these proceedings were had, the city of Fort Scott was governed by the act governing cities of the second class, (Laws of 1867, ch. 68, p. 107;) and while that act provided for a city marshal it did not provide for any *deputy* city marshal. Could there be a deputy marshal? John G. Harris was the city marshal; could he appoint a deputy? The statute alone did not authorize it. Did the statute, aided by the common law authorize it? Counsel for defendants claims, that the marshal was authorized to appoint a deputy by the following action of the city counsel, to-wit:

1. CITY MARSHAL; power to appoint deputy, under act of 1867.

"COUNSEL CHAMBER, APR. 10th, 1867.

"SPECIAL MEETING.—Mayor McDonald in the chair. Present, full board. * * * On motion, the city marshal was instructed to appoint a deputy immediately. On motion, adjourned.

"Approved: JOHN McDONALD, Mayor.
"Attest: John Van Fossen, City Clerk."

If it was necessary for the mayor and council to act at all in the premises, it seems from the statute that it was necessary that they should have done so by *ordinance*,

and not otherwise. Section 2 of article 3 of said ch. 68, Laws of 1867, (page 112,) provides that, " The cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact *ordinances* for the following purposes in addition to the other powers granted by this act : * * * 14.—To provide for removing officers of the city for misconduct, whose offices are created and made elective by this act ; and shall have power to *create any office* that they may deem necessary for the good government and interest of the city." And section seven of the same act, page 108, provides that the style of all ordinances must be : " Be it ordained by the Mayor and Councilmen of the City of ———." And the mayor not only presides at all meetings of the city council, and gives the casting vote when the council are equally divided, (id., p. 109, art. 2, § 1,) but he also has power to sign or veto any ordinance passed by the city council ; (id., p. 110, art. 2, § 4.) If it was necessary that the office of deputy marshal should have been created by the mayor and council, was it legally created ? If the city marshal had authority from any source to appoint a deputy, was the defendant Files that deputy ? The evidence is clear and undisputed that he acted as such. It is proved beyond all doubt that he was deputy marshal *de facto;* and there is no evidence tending to show that he was not deputy marshal *de jure*, (provided of course that the marshal had a right to appoint a deputy.) The

2. DEPUTY MAR-SHAL ; when officer de facto is presumed to be officer de jure.

first question is whether it was necessary that he should be an officer *de jure*. We think it was. The action was directly against him, and for an act which he had no right to do unless he was an officer *de jure*. He had no right to imprison the plaintiff unless he was an officer *de jure*. The next question is whether proof that he was an officer *de facto* is sufficient,

in the absence of any evidence to the contrary, to show that he was an officer *de jure*. We think it was. (Hilliard Rem. for Torts, 389; *Colton v. Beardsley*, 38 Barb., 29; *Briggs v. Taylor*, 35 Ver., 57.) There was also the parol evidence of the marshal showing that he by an instrument in writing, appointed the .defendant Files deputy marshal. But as the writing was not produced, nor its loss accounted for, there is some question of the competency of such parol evidence.

II. It is claimed that the plaintiff violated a certain city ordinance. This was an ordinance " to preserve the peace, order, and quiet of the city of Fort Scott," and seems to have been adopted February 16th, 1861. Had the city of Fort Scott any legal corporate existence at that time? The acts of 1855 (ch. 40, p. 812,) and of 1860, (Private, ch. 54, p. 114,) providing for the incorporation of the town of· Fort Scott, were neither pleaded nor proved by the defendants. Are these acts of such a public nature that the courts will judicially take notice of them without proof of their existence? We think they are. (*New Portland v. New Vineyard*, 16 Me., 69, 70; *Gorham v. Springfield*, 21 Me., 58, 60; *State, ex rel., v. Lean*, 9 Wis., 284, 295.) Towns and cities are not private corporations; they are public corporations, created for the purpose of governing a portion of the people of the State who may reside within their boundaries, or may casually be there, or have property there. In chartering such corporations the State in one sense charters a portion of itself. Such corporations are simply instruments in the hands of the State made use of for the better protection of rights, the administration of justice, and the enforcement of the laws. All their powers must be exercised for the general good of the community, and not for any selfish or private purpose. Laws creating

*3. Towns and cities are public corporations.*

such corporations we hardly think are private laws. We think there was sufficient evidence that the people of Fort Scott organized as a corporation under these laws. But even in the absence of any evidence to the contrary, we think it ought to be presumed that they did so organize. The evidence of the existence of said ordinance was sufficient. (Comp. Laws of 1862, p. 108, § 11; Gen. Stat., p. 701, § 379.) The ordinance was read from the "book of ordinances" of said city. We think it was unnecessary to go into the proof of all the preliminary steps in passing and publishing said ordinance. The book itself of ordinances was *prima facie* evidence of the validity of the ordinance. If anything essential to its validity was omitted in passing or in publishing it, it then devolved upon the plaintiff to show such invalidity.

III. It is questionable upon the evidence whether the defendant Files arrested or imprisoned the plaintiff at all prior to the said trial in the mayor's court. But if he did, had he any right to do so? He made the arrest without any warrant, and the offense was not committed in his presence. (Ch. 68, Laws of 1867, p. 126, art. 5, § 1. It must be presumed from the evidence that the plaintiff committed the offense with which he was charged, which was a breach of the peace by fighting; and it must be presumed that the defendant Files made the arrest on sufficient information. In such a case he would not at common law be liable. (1 Chitty Cr. L., 15; Gwynne on Sheriffs, 522; Bac. Abr., *Trespass*, (D.,) and authorities referred to in brief of counsel for defendants.

4. Arrests without process; liability at common law.

IV. That the defendant John McDonald was mayor of Fort Scott cannot be questioned; but whether he was a judicial officer, or had the power to exercise any judicial functions, is controverted. It is claimed by counsel for

plaintiff that § 21 of art. 4 of said act, (Laws of 1867,
p. 126,) is unconstitutional. and void. It is
claimed that it attempts to confer judicial
power upon a ministerial officer. Or at least,
it is claimed that it attempts in violation of § 1, art. 3.
of the constitution, which vests all the judicial power of
the State in *courts*, to confer judicial power upon an
officer who is not a court nor a judicial officer. It is
probably true that the mayor as mayor is not under said
act a judicial officer; but when he exercises the powers
and jurisdiction of the police judge, as he is authorized
to do under said § 21, in cities of the population of Fort
Scott, he is certainly a judicial officer and a court. It is
true that the statute does not in terms create him "a
court;" but it is also true that the statute does not in
terms create the police judge a court, and we hardly sup-
pose that counsel would claim that the police judge is not
a court when exercising the powers conferred upon him
by the statute. It has already been decided in this court,
and we think rightly, that it is not necessary that the
legislature, in order to create a court, or to confer judicial
power, should first in terms create a court: *Malone v.
Murphy*, 2 Kas., 250; *State v. Young*, 3 Kas., 445. When-
ever the legislature confers upon any board or officer
powers which are unquestionably judicial in their nature,
and when they also invest such board or officer with all
the instruments and paraphernalia of a court, they un-
doubtedly create a court although they may not in terms
say so.

V. The next question is whether the defendant John
McDonald, as mayor and *ex officio* police judge, had juris-
diction to hear and determine whether the
plaintiff, Prell, had committed any offense.
No complaint, written or otherwise, was made

*[margin notes: 5. MAYOR; when he may act as police judge, and exercise judicial powers. 6. False impris-onment. When arrest and im-prisonment are illegal.]*

before the mayor and against Prell except that the defendant Files told the mayor orally and not under oath that said Prell was charged with " fighting and disturbance of the peace." Fighting? Where; when; with whom; with what weapons? Did the fighting and disturbance of the peace amount to a felony, or only to a misdemeanor? Was it to be prosecuted under the laws of the State, or under the city ordinances? And was the prosecution to be a *trial* for the offense, or only a preliminary examination? The mayor, under the statutes, had power to hear and determine all offenses against the city ordinances, and all misdemeanors against the laws of the State committed within the county; and he also had power to hear all preliminary examinations for felonies against the laws of the State committed within the county, and to require that the accused be held for his appearance at the next term of the district court to answer to the charge against him. No warrant was issued against or served on Prell prior to or during the trial; and the supposed offense was not committed in the presence of either McDonald or Files. Prell was not arraigned, nor was he required to plead; and he did not plead to anything. No jury was ordered or empanneled; but neither party claimed a jury. At the trial a witness was sworn and examined. The following is a full and complete record, (so far as it was reduced to writing,) of everything that was done in the mayor's court, or by the court, from the commencement to the conclusion of the whole transaction. The first is the whole record of the case; the second is the warrant which was issued by McDonald, and under which Prell was imprisoned by Files:

I.—TRANSCRIPT FROM DOCKET.

"FORT SCOTT, MAY 25, 1867.—MAYOR'S COURT. Brought

before me, Lewis Prell and A. M. Hellman, charged with the disturbance of the peace of the city by fighting. Upon hearing the case and the testimony of witnesses, they were each found guilty and fined five dollars each and costs, and to stand committed until paid. On refusing to pay, commitment issued to marshal.

| | | |
|---|---|---|
| Fine, each, $5.00 | $10.00 | |
| Marshal | 2.25 | |
| Judge | 1.65 | |
| Witness fees | .50 | $14.40 |

"John McDonald, Mayor."

### II.—COPY OF WARRANT.

" City of Fort Scott,  
Bourbon County, Kansas, } ss.

" *To the Marshal of the City aforesaid, greeting :* Whereas, Hellman and Prell, of said city, have been arrested for a disturbance and breach of the peace, by fighting in said city, and have been examined by me, John McDonald, mayor of said city, on the truth of said charge, and I was of the opinion and found that such charge was true, and thereupon ordered said Hellman and Prell each to pay the sum of five dollars and costs of suit, and to stand committed until paid, which they each refused to pay. Wherefore the State of Kansas hereby commands you to receive the said Hellman and Prell into your custody, there to remain until discharged by due course of law. Given under my hand this 25th day of May in the year 1867. John McDonald, Mayor."

Who is the plaintiff, and who is the defendant, in these proceedings? They have no "title," as proceedings of courts usually have, informing us; and while it may be ascertained from the body of the proceedings who the defendants are, it is difficult to ascertain who the plaintiff is. Either the State or the city may prosecute for the offense of "disturbance of the peace of the city by fighting," or "disturbance and breach of the peace by fighting in said city;" and either may do so before the mayor. The mittimus informs us that it was the State that commanded the marshal to receive said Prell into his custody;

but counsel for the defendants, McDonald and Files, informs us by his argument that it was the city that prosecuted the case. It would seem however, from the brief of counsel for Prell, that he claims that under section 17, article 3 of the constitution, "The style of all process," whether the prosecution be by the State or by a city, "shall be '*The State of Kansas*,' and all prosecutions shall be carried on in the name of the State," whether they are under the laws of the State or under city ordinances.

Had the mayor authority to hear and determine said case without any complaint under oath, or without any written complaint of any kind whatever being made or filed? At common law, no trial for any offense except contempts could ever be had except upon a written complaint. This written complaint was usually an indictment; but in certain prosecutions, called "appeals," it was a declaration; and in certain other prosecutions of an inferior character it was an information. (See Hawkin's Pleas of the Crown, *Attachments for Contempts*, ch. 22; *Appeals*, chapters 23 and 24; *Indictments*, ch. 25; *Informations*, ch. 26; 4 Bl. Com., *Contempts*, 283; *Indictments*, 302; *Informations*, 308; *Appeals*, 312.) Summary prosecutions and summary convictions, except for contempts, were unknown to the common law; (4 Bl. Com., 280; Barbour's Cr. L., 614.) In this State the common law has been adopted by statutory enactments, and every proceeding must be in exact accordance with the common law unless the common law has been expressly or by necessary and unavoidable implication dispensed with. If proceedings before police magistrates are summary proceedings, they are such only so far as the statute makes them so. They can draw nothing of a summary nature from the com-

*7. Complaint must be in writing, and under oath.*

mon law. Mr. Barbour in speaking of summary convictions says, that "A conviction, to be good, must be founded on several preliminary proceedings. 1.–There must be a *complaint or charge* against the person. \* \* \* And it is said the only cases in which this *document* (the complaint) is properly dispensed with, are those in which justices are authorized to convict upon their own view." (Barb. Crim. L., 614, 615.) Mr. Bishop says that "There have been instances in this country of summary convictions *on view*, without complaint, oath, or evidence; but they are rare, and probably in most of our States the magistrate can proceed only on a written complaint, attested by the oath of the complainant." (1 Bish. Crim. Proc., § 894.) Mr. Chitty says that "It is the duty also of the magistrate to take all charges, of whatsoever nature, kind, or complexion they may be, in writing." (Chitty Cr. L., 34.) In Archbald's Cr. Prac. and Pleadings, (page 31, note 1,) we find the following : "It is laid down by several writers, that it is the duty of the magistrate, independent of any statutory provision, to take all charges, of whatsoever kind or complexion they may be, in writing." In the case of *Allen v. Gray*, 11 Conn., 95, 102, which was an action brought against a justice of the peace for trespass *vi et armis*, and false imprisonment, for entering a fine of $2.50 and costs against the plaintiff and causing him to be arrested on the complaint of a person who had no authority to make such a complaint, the court use this language : "The process, then, was issued without complaint; and the only quesion is, whether such a process be void? And this question would seem to be too well settled, both on the ground of principle and authority, to admit of dispute. For although the justice had jurisdiction of the offense, and a right to issue process against the person of the

plaintiff, he had no jurisdiction of this cause; an essential pre-requisite was wanting; there was no complaint. He was no judge; and the proceedings were utterly void." The court held that the justice was liable. In the case of *Tracy v. Williams*, 4 Conn., 107, the court held that "A justice of the peace, after having arrested an offender against the riot act, on view, is not authorized, without a written complaint or information, to bind him over to a higher court for trial." And, "If a justice of the peace, before whom an offender against the riot act, arrested on view, is brought to be further proceeded against, make an order, without a previous complaint or information in writing, requiring such offender to be recognized for trial, and on his refusal to comply with such order commit him to prison, such justice is liable in trespass for false imprisonment." In Maine it has been been decided that, "Where criminal prosecutions originate upon complaint, one made under oath or affirmation is implied. This may fairly be understood as a part of the technical meaning of the term, whenever used in a statute providing for the prosecution of an offense in that mode." (*Campbell v. Thompson*, 16 Me., 117, 120.) And if the justice proceed without a complaint having been made, he renders himself liable to an action.

But let us examine our own statutes: Under section 21 of article 4 of said chap. 68, Laws of 1867, all the powers and jurisdiction of police judges are conferred upon the mayors of cities containing more than 1,000 and less than 4,000 inhabitants. And the powers and jurisdiction of police judges are defined by said article, pages 123 to 126. Under said article police judges have jurisdiction to hear and determine all offenses against the city ordinances; and to hear and determine all actions civil or criminal arising under the laws of the State which come

within the jurisdiction of a justice of the peace; and to hear all preliminary examinations which may be heard by a justice of the peace. Some of the sections of said article apply to actions arising under the laws of the State exclusively; some of them to actions under the city ordinances exclusively; and some of them to both kinds of actions. Sections three and eleven of said article relate more specifically to procedure. Section 3 makes provision for a *complaint*, and section 11 provides "That in *all cases* not herein specifically provided for, the progress and proceedings before the judge shall be governed by laws regulating proceedings in justices' courts, in civil and criminal cases respectively." It is claimed by counsel for defendants, that these two sections relate to actions arising under the laws of the State exclusively. Such will be conceded as to section three, but such cannot easily be conceded as to section 11. The words, "all cases," in said section 11 mean all cases; and cases arising under the city ordinances are not "specifically providing for" in any other part of the act. If said act had anywhere "specifically provided for" a mode of procedure for cases arising under the "city ordinances," why did not the counsel point it out to us? If police judges must adopt the procedure required in justices' courts, then of course there must be a written complaint. But suppose that section 11 does not apply to cases arising under the city ordinances; then where does the mayor or police judge get authority for hearing cases without any complaint having been made? We know of no such authority, and none has been pointed out to us.* It is urged by counsel that the trial before a mayor is a summary proceeding. But the statute does not in terms or

[ * See § 73, ch. 60, and § 57, ch. 62, Laws of 1871, and § 80, ch. 100, Laws of 1872, changing this rule in certain cases in proceedings before the Police Court for violations of city ordinances enacted by cities of the second class, and cities of the third class.—Reporter.]

by implication make it a summary proceeding, or at most it does not in this respect.

VI. Was the warrant under which Prell was committed of any validity? The christian name of Prell was *8. Warrant, indictment, etc.; omissions of name; when void.* omitted, and there was nothing else in said warrant by which the Prell intended, could be identified and distinguished from any other Prell that may have been in said city. Usually, and perhaps always, such a warrant is void: Arch. Cr. Pr. and Pl., 126, *et seq.*, and note 1 on page 33; 1 Chitty Cr. L., 39; 2 Hawkin's Pl. Cr., 259, § 103. In fact, any instrument with a like defect is void. An indictment which does not mention the christian name, nor otherwise describe the defendant, or other person therein intended to be mentioned, is void, and may be quashed. (Barb. Cr. L., 325, 328; 1 Whart. Am. Cr. L., §§ 235, 236; Whart. Prec. Indict., 5, note *d;* id., 8, note *e.*) And a deed of conveyance of real estate subject to a like defect is void for uncertainty. (Coke L., 3 *a;* Comyn's Dig., Fait (E 3,) Grant (A 2,) Capacity (B 4;) 3 Washb. Real Prop., p. 566; 2 Hil. Real Prop., 505, 506, § 10.)

If the proceedings of the mayor and deputy marshal were so irregular that they were void, as we think they *9. Liability; illegal acts; malice.* were, then of course the mayor and deputy marshal are liable to the plaintiff for the false imprisonment although they may have acted in entire good faith. The authorities are too numerous to be cited; hence we will only refer to Bacon's Abr., (*Trespass, D.* 3,) and the authorities there cited, and to Shear. and Redf. on Negligence, p. 197, § 159, and notes, and cases there cited. When an officer acts without authority, or exceeds his authority, he is liable, whether he acts maliciously or not. It is only when he acts within the scope of his authority that it is necessary that he should also .

act maliciously in order to make himself liable.   As to
the liability of officers for issuing or serving an irregular
or void writ on the proper person, or on the person
intended,  see ·the following ·authorities:  'Scott  v.  Ely,
4 Wend., 555; Griswold v. Sedgwick, 6 Cow., 456; same
case, 1 Wend., 126; Mead v. Hams, 7 Cow., 332; Gurn-
sey v. Lovell, 9 Wend., 319; Melvin v. Fisher, 8 N. H.,
406; Shadgett v. Clipson, 8 East, 328; 6 Term R., 234; 1
Barn. and A., 647; 2 Camp., 270.

The judgment of the court below must be reversed,
and the cause remanded for further proceedings.

All the Justices concurring.